OPINION OF THE COURT
Manzanet-Daniels, J.
Police officers observed defendant and his companion, William Brown (see People v Brown, 115 AD3d 38 [2014] [decided herewith]), running across Broadway, in the Times Square area, at approximately 4:40 a.m., “looking over their shoulder[s].” No crime had been reported, the officers did not see anyone chasing the two men, and no apparent contraband was visible.[1]
The motion court denied defendant’s motion to suppress the identification and property seized from him incident to arrest, finding that the police had reasonable suspicion to stop defendant and Brown when they observed them “moving at a significant pace . . . looking over their shoulders . . . as if to see if they were being followed.” The court noted that “[b]oth Officer Carey and Sergeant Monahan knew from prior contacts that Mr. Brown engaged in fraudulent accosting in that area,” and reasoned that “someone knowing of Mr. Brown and his prior criminal activities [would] believe that he had engaged in some sort of scam, and was fleeing a scene.” The court found that “[t]he fact that [defendant Thomas] was with Mr. Brown and *71 mimicking his conduct provided reasonable suspicion] that he had engaged in whatever conduct Mr. Brown had committed.” We now reverse.
A level three forcible stop is constitutional only if the police have a “reasonable suspicion that a particular person was involved in a felony or misdemeanor” (People v Hollman, 79 NY2d 181, 185 [1992]). In determining whether the police officers had the requisite reasonable suspicion, only the information known to the officers prior to the forcible stop is relevant (see People v Cantor, 36 NY2d 106, 111 [1975]).
The officers’ knowledge of defendant Brown’s prior criminality in the same neighborhood was not sufficient to give rise to reasonable suspicion justifying a level three intrusion as to Brown; perforce, knowledge of Brown’s prior criminality was insufficient to justify a level three intrusion as to defendant, who was merely in Brown’s company and was not even known by the officers to have a criminal record. The police sergeant only knew defendant by face, and the officer did not know defendant personally and had never arrested him. Contrary to what is asserted by the dissent, there is no evidence that the police officers knew defendant to have victimized people in the area. The motion court, in denying defendant’s motion to suppress, appears to have endorsed a theory of “guilt by association,” which must vigorously be rejected.
“[A] stop based on no more than that a suspect has previously been arrested ... is premature and unlawful and cannot be justified by subsequently acquired information resulting from the stop” (People v Johnson, 64 NY2d 617, 619 [1984]). In Johnson, the defendant, a known burglar, was stopped by officers who observed him walking around and looking at houses in an area where previous burglaries had occurred. The Court of Appeals held the stop unlawful, reversed, and granted the motion to suppress.
Likewise, in People v McCullough (31 AD3d 812 [3d Dept 2006], lv denied 7 NY3d 850 [2006]), the defendant, who was known to the officer as a result of previous arrests for trespass and possession of a controlled substance, was observed coming from the backyard of a building known for narcotics dealing. Upon seeing the police, the defendant stopped, turned, and ran. The Third Department held that the police lacked reasonable suspicion to pursue the defendant, and granted the motion to suppress.
This Court, in People v Boulware (130 AD2d 370 [1st Dept 1987], appeal dismissed 70 NY2d 994 [1988]), stated that an of *72 fleer’s belief that the defendant has had previous arrests is an insufficient basis on which to find an objective suspicion of criminal activity, reasoning that “[t]o hold otherwise would be to exclude all persons with arrest records from the protection of the Fourth Amendment and render them subject to arbitrary stops and inquiries” {id. at 373). An officer’s surmise as to a person’s propensity to commit crime, in the absence of objective indicia that a crime has taken or will be taking place, is an insufficient constitutional predicate {id.).
As Johnson and Boulware make clear, the officers’ knowledge of Brown’s criminal past is not tantamount to an “indication of criminal activity.”[2] This logic is even more compelling as to defendant, who was not even known to have a criminal past, and was assumed guilty by mere association with Brown.
The fact that the officers observed defendant and Brown running does not elevate the level of suspicion. Flight, accompanied by equivocal circumstances, does not supply the requisite reasonable suspicion (see People v Holmes, 81 NY2d 1056 [1993]). The police did not observe conduct indicative of criminality, nor did they even possess information that a crime had occurred in the area. The cases relied on by the People are readily distinguishable insofar as they involve flight coupled with other factors (see e.g. People v Poh Wong, 204 AD2d 111 [1st Dept 1994] [defendant running through the streets of Chinatown, looking over his shoulder, along with man holding a revolver], lv denied 84 NY2d 835 [1994]).
Accordingly, the judgment of the Supreme Court, New York County (Thomas Farber, J., at dismissal motion; Michael R. Sonberg, J., at suppression hearing; Cassandra M. Mullen, J., at jury trial and sentencing), rendered June 22, 2011, as amended July 20, 2011, convicting defendant of grand larceny in the third and fourth degrees and fraudulent accosting, and sentencing him, as a second felony offender, to an aggregate term of 3V2 to 7 years, should be reversed, on the law, the motion to *73 suppress the out-of-court identification and property seized from defendant granted, and the matter remanded for a new trial preceded by an independent source hearing.

. I am in substantial agreement with the more detailed recitation of facts in the dissent.

. The cases relied on by the People for the proposition that a defendant’s criminal history is relevant to the reasonable suspicion calculus are distinguishable (see e.g. People v Teasley, 88 AD3d 490 [1st Dept 2011] [officer recognized defendant from wanted poster], lv denied 19 NY3d 977 [2012]; People v Lynah, 56 AD3d 375 [1st Dept 2008] [defendant, whom officer recognized from recent drug investigation, observed holding a plastic bag and counting something], lv denied 12 NY3d 760 [2009]; People v Rivera, 50 AD3d 458 [1st Dept 2008] [recognizing defendant’s vehicle from a previous narcotics surveillance operation, officers followed defendant, stopping him only after observing a drug transaction], lv denied 11 NY3d 740 [2008]).